**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **MOHAMED BIN MOHAMED MANA SALEH** | **CIVIL ACTION NO. 24-cv-1019** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ALEJANDRO N MAYORKAS ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion to dismiss. [doc. #44]. The motion was filed by Defendants in response to Plaintiff's Amended Complaint for Declaratory and Injunctive Relief. [doc. #41]. Defendants allege in their motion that Plaintiffs have failed to state any claim upon which relief can be granted. The motion is opposed. For reasons detailed below, **IT IS RECOMMENDED** that the motion to dismiss be **GRANTED.**

## I. BACKGROUND

Plaintiff Mohamed B. Saleh ("Plaintiff") is a naturalized United States citizen currently residing in the U.S. [doc. #40, p.8]. Plaintiff alleges he married Samra Ali Kassem ("Kassem"), who is a citizen of Yemen, on June 30, 2009. [doc. #41-1, pp. 9, 17]. On July 18, 2017, Plaintiff filed an I-130 Petition for Alien Relative on behalf of Kassem as well as a I-130 petition on behalf of F.M.M.S. [doc. #40, p.8]. F.M.M.S was a minor at the time of the filing of the I-130 petition and is still currently a minor. [doc. #41-1, p.9]. On or about December 12, 2018, U.S. Citizenship and Immigration Services ("USCIS") mailed Plaintiff an appointment notice requesting he

complete an Affidavit of Residence and Relationship and bring to his interview scheduled for December 27, 2018. *Id*. at 39. This interview was later rescheduled at Plaintiff's request for January 31, 2019. *Id*. at 40. Plaintiff attended the interview on January 31, 2019, but did not provide the completed Affidavit of Residence and Relationship until February 12, 2019. *Id*. Both Petitions were initially denied on December 11, 2019, on the grounds that Plaintiff had failed to establish a bona fide relationship to Kassem and failed to demonstrate that F.M.M.S. can be classified as his child. *Id*. at 39, 48.

In 2023, USCIS reopened adjudication on the I-130 petitions. [doc. #44-1, p.9]. On July 25, 2023, Plaintiff again appeared for an interview, giving testimony and submitting documentary evidence. [doc. #41-1, p. 77]. On August 18, 2023, USCIS issued a Notice of Intent to Deny ("NOID") the I-130 Petition on behalf of Kassem. [doc. #44-1, p.9]. USCIS also issued a NOID in the case of F.M.M.S. [doc. #44-1, p. 12]. USCIS based their decision on Plaintiff's various contradicting claims to USCIS over the years. [doc. #41-1, p.9]. The NOID advised Plaintiff that he had 33 days to submit additional information, evidence, or arguments in support of the I-130. [doc. #44-1, p. 12].

On September 15, 2023, Plaintiff requested an extension of time to respond to the NOID(s). *Id*. However, no response to the NOID was submitted. *Id*. USCIS issued decisions in both cases on October 19, 2023. [doc. #41, p.11]. In those decisions, USCIS concluded that the evidence submitted was insufficient to reliably establish the claimed relationships. [doc. #44-1, p. 12].

On February 12, 2023, Plaintiff filed a Complaint for Declaratory and Injunctive Relief against Defendants in the United States District Court for the District of Columbia. [doc. #1]. Defendants filed a Motion to Transfer Case, seeking transfer of the case to the Western District of Louisiana, Plaintiff's home district. [doc. #16]. The Motion to Transfer the Case was ultimately

granted, thereby transferring the case to this Court. [doc. #32].

On December 30, 2024, this Court issued a Memorandum Order allowing Plaintiff to file an Amended Complaint to address venue in this Court and to assert additional claims. [doc. #40]. On January 29, 2025, Plaintiff filed the Amended Complaint at issue in the Western District of Louisiana. [doc. #41]. The Amended Complaint alleges four counts against the Defendants: (1) violations of the Administrative Procedures Act ("APA"), codified at 5 U.S.C. § 701 et al; (2) violations of the Procedural Due Process Clause under the Fifth Amendment of the United States Constitution; (3) violations of Equal Protection Clause under the Fifth Amendment of the United States Constitution; and (4) seeking relief under the Declaratory Judgment Act., 28 U.S.C. § 2201. *Id*.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, inter alia, when it contains a "short and plain statement ... showing that the pleader is entitled to relief ...." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal*, 556 U.S. at 663. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Although

the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 663. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 F. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [his] legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl.*, 550 U.S. at 555).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 320 (1989).

## III. ANALYSIS

### A. Subject Matter Jurisdiction

As a threshold matter, the Court considers whether Saleh's claim is unreviewable, as Defendants claim in their motion, because the USCIS "applied the correct evidentiary standard in making its decision" and "[the USCIS's] credibility determination is not subject to judicial review. [doc. #44, p. 23]. The Administrative Procedure Act ("APA"), under which Plaintiff has brought suit, allows judicial review only of final agency actions. *See* 5 U.S.C. § 704. Agency action like the visa denial here is final unless administrative appeal is "expressly required by statute" or the agency "requires [exhaustion] by rule and provides that the action meanwhile is inoperative." *Id*; *see Darby v. Cisneros*, 509 U.S. 137, 146–47 (1993) (explaining that courts cannot require administrative appeal when not required by statute or regulation).

The APA's judicial review provisions are treated as limits on subject matter jurisdiction. *People's Nat'l Bank v. Off. of Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004). Characterizing a rule as a limit on subject-matter jurisdiction "renders it unique in our adversarial system." *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 153 (2013). Unlike most arguments, challenges to subject matter jurisdiction may be raised by the defendant "at any point in the litigation," and courts must consider them *sua sponte*. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

All judgments regarding relief under § 1255 are specifically categorized as discretionary and non-reviewable by § 1252(a)(2)(B)(i). *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 277 (5th Cir. 2008). I–130 petitions, however, are authorized by § 1154(a)(1)(A)(i), not § 1255, and are not mentioned in § 1252(a)(2)(B)(i). The Fifth Circuit reasoned that Congress included the phrase "specified under this subchapter" in § 1252(a)(2)(B)(ii) for the purpose of precisely identifying

which discretionary decisions are beyond judicial review. *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005). The court in *Zhao* emphasized that this language was meant to delineate definitively which types of decisions are discretionary, and thus non-reviewable, by a court. *Id.*

The court continued this precedent in *Ayanbadejo* stating, "we decline to abdicate our jurisdiction based on any such extra-statutory authority." *Ayanbadejo*, 517 F.3d at 277 (holding that "[c]ategorizing I–130 petition determinations as discretionary based on authority found in an implementing regulation would contradict the plain statutory language of § 1252(a)(2)(B)(ii), which specifies that courts are only stripped of authority to review decisions designated as discretionary by the statute."). Following the clear precedent in *Zhao* as well as *Ayanbadejo*, the inquiry need not go any further. Determinations regarding the validity of I–130 petition determinations are not discretionary within the meaning of § 1252(a)(2)(B) and, thus, are subject to review by courts. Therefore, the Court has subject matter jurisdiction over the present case.

**B. Plaintiff's APA Claim**

Defendants argue that Plaintiff failed to state a plausible claim that USCIS violated the APA when it denied Plaintiff's I-130 petition. Under the APA, courts should set aside an agency determination only if it is deemed "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Mangwiro v. Napolitano*, 939 F. Supp. 2d 639 (N.D. Tex. 2013), *aff'd sub nom. Mangwiro v. Johnson*, 554 F. App'x 255 (5th Cir. 2014) (citing *National Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir.1989)); *see also* 5 U.S.C. § 706(2)(A) & (D). An agency decision rises to the level of being arbitrary and capricious if "the agency fails to examine the relevant evidence or articulate a satisfactory explanation for the decision." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983). This is a "narrow standard of review" under which "a court is not to substitute its judgment for that of the agency."

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 U.S. 1891, 1905 (2020). Thus, a court will not overturn an agency's final decision if the agency "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 158 (1962)).

Plaintiff argues, in essence, that Defendants have "failed to follow existing procedures prescribed by the [Immigration Nationality Act], implementing regulations, the [Adjudicator's Field Manual], and the USCIS Policy Manual" in issuing the denials of Plaintiff's I-130 petitions. [doc. #41, p. 55]. However, in support of this, Plaintiff points only to Defendants' rejection of provided documentation; specifically, he points to the assertion that provided documentation was insufficient to establish the requisite relationship to either Kassem or F.M.M.S. However, USCIS stated in its letter to Plaintiff that his petition on behalf of Kassem was denied because "evidence is insufficient to establish that your prior marriage(s) to Rowi Kahtan Nasir aka Rowya Naser Kahtan was properly terminated, dissolved, or annulled." Specifically, USCIS noted the following reasons for this finding:

> 1. Since 1999, on your first N-400 application and all applications filed after that, you have consistently claimed that your first spouse was Rowi Kahtan Nasir or a variation of that name. You have claimed on previously filed N-400 applications that your marriage to Rowi Kahtan Nasir occurred on July 14, 1991 and also July 06, 1990. The Marriage certificate you provided for you and the beneficiary shows that you were married on May 05, 1992.
>
> In a previous decision, the board has held that the polygamous marriage of beneficiary and petitioner which is valid in Jordan where performed cannot be recognized as a valid marriage for immigration purposes and will not support a visa petition for nonquota status on behalf of the beneficiary because the marriage is repugnant to United States public policy. This invalidity is not altered by beneficiary's divorce of first spouse subsequent to the second (polygamous) marriage.
>
> Since you were married to Rowi Kahtan Nasir at the time you married the

beneficiary on May 5, 1992, this subsequent marriage cannot be recognized as a valid marriage for immigration purposes.

2. Since 2010, you have claimed on prior applications filed with USCIS and a complaint filed in a U.S. District Court that Rowi Kahtan Nasir died in 2006. You claimed that you married the beneficiary on June 30, 2009[;] however, you have not provided a Marriage Certificate for this event.

   You have only provided one affidavit stating that Abdulla Bin Abdulla Muthana and Ahmed Muthana Ali were at the marriage on June 30, 2009[;] however[,] this affidavit was made 7 years after the event took place.

   USCIS and the U.S. Department of State (DOS) consider a marriage registration document issued by the Ministry of Interior's Civil Status Authority or Civil Registry Authority as primary proof of the claimed family relationship. USCIS records show that you have not submitted a Yemeni marriage document issued by either authority.

3. You have changed your testimony, the information on previously filed applications, sworn statements given during previous interviews, and complaints filed with a U.S. District Court.

   You now claim that Rowi Kahtan Nasir and the beneficiary are actually the same person and she divorced you because of the 2 marriages, then after the divorce she changed her name, and then you remarried her after your divorce from Pamela Martin Saleh in 2008.

   You have provided no evidence of the divorce you claimed to have occurred between you and Rowi Kahtan Nasir aka Samara Kassem Ali. You have provided no evidence of the legal name change showing that Rowi Kahtan Nasir and the beneficiary are the same person.

   The death certificate you provided shows that Rowi Kahtan Nasir's parents are Nasser Qahtan and Fatima Saleh Assad and her date of birth is…1975. The beneficiary's parents are Ali Kassim and Fatima Kassim Mohsen as noted.on the Form 1-130, Form I-130A Supplemental Information for Spause Beneficiary and the May 5, 1992 Marriage Certificate, these documents also show the beneficiary's date of birth as…1977. You have not provided a reasonable explanation as to why the beneficiary not only changed her name, but also her parents names, and her date of birth.

You have not provided evidence establishing eligibility for the benefits sought for the reasons stated above. The evidence in the record shows that you were married to Rowi Kahtan Nasir when you married the beneficiary. The polygamous marriage of you and the beneficiary cannot be-recognized as a valid marriage for

> immigration purposes because the marriage is repugnant to United States public policy.

[doc. #44-2, p. 7-8]. In their decision letter regarding F.M.M.S., USCIS noted:

> In support of the claimed relationship, you submitted two different copies with English translations of the beneficiary's birth certificate. The birth certificates you have provided as evidence of your claimed relationship have several inconsistencies that cast doubt on the credibility of the documents. Therefore, USCIS is not satisfied with the authenticity of these documents.

[doc. #41, p. 82]. In support of this decision, USCIS outlined the reasons the documentation was inadequate including:

> You claimed during your interview that the beneficiary was born on May 11, 2010.
>
> - The first birth certificate, filed with the petition, shows that the beneficiary was born on November 5, 2010. The English translation states "The birth data was recorded in the Register of birth No (14) under No (715). Date of Issue, August 27, 2014." This birth was registered 4 years after the birth occurred. The certificate states the beneficiary was born in Moon Village, Al Shuaib District and the birth was registered at the Civil Personal Status Department, Al-Shuaib, District: Al-Shuaib. According to the petition you filed and reviewed during your interview, the beneficiary was born in Hauf, Al Shaib, not Moon Village, Al Shuaib.
>
> - The second birth certificate, provided at the interview, shows that the beneficiary was born on 2010. The translation states "The birth data was registered in the Birth Registrar No.6 under Registration No. 3222 and the date of Registration on September 10, 2018." This is 8 years after the birth occurred. This document was registered at the Main Center, District: Sira, Province: Aden. This birth certificate was registered at a different location than the first birth certificate and given a different registration number.
>
> - On September 13, 2010, 4 months after the birth of the beneficiary, you appeared for an interview for the Form N-400, Application for Naturalization filed on April 19, 2010. During this interview, you were asked on a sworn statement "How many children do you have?" You testified, "5." and "What are the names of your children?" You testified, "Gibilah - Male, Dyana - Female, Abdullah - Male, Anis - Male, and Maymona - Female." You did not notify the interviewing officer about the beneficiary.
>
> - On February 25, 2011, you filed Form 1-130, Petition for Alien Relative on behalf of . On Page 2, you listed all of your children, except the beneficiary. This petition was filed 9 months after the beneficiary was born. The two late registered birth certificates were registered with two different governments at two different

> times. The birth certificates were given two different registration numbers, provide different dates and locations of birth than what has been reported. Additionally, you have filed 2 different applications/petitions with USCIS subsequent to the beneficiary's birth and did not claim the beneficiary as your child on either document or during testimony given to a U.S. Government Official while under oath.
>
> The two late registered birth certificates were registered with two different governments at two different times. The birth certificates were given two different registration numbers, provide different dates and locations of birth than what has been reported. Additionally, you have filed 2 different applications/petitions with USCIS subsequent to the beneficiary's birth and did not claim the beneficiary as your child on either document or during testimony given to a U.S. Government Official while under oath.

*Id*. at 87. Plaintiff further alleges that Defendants "failed to provide Plaintiff with an opportunity to submit DNA testing evidence which will conclusively establish his relationship with his child and as well as demonstrating his bona fide marriage to his wife." [doc. #41, p.31]. However, as Plaintiff conceded in his Amended Complaint, the USCIS's I-130 instructions advise petitioners not to submit biological or genetic *samples* and provides separate instructions for the submission of DNA testing and the appropriate facilities to conduct such tests. *Id*. at 25. There appears to be no bar on the submission of DNA evidence or testing results at any point in the process, but instead a limitation on sending sample themselves directly to USCIS. Further, DNA evidence of a parent-child relationship would not necessarily be sufficient to grant an I-130 petition, as laid out in the same DNA testing instructions. The Court therefore finds the USCIS reached its decision by examining a plethora of factors and providing detailed explanations. This decision was not arbitrary or capricious, nor do the facts asserted by the Plaintiff demonstrate an abuse of discretion.

Accordingly, it is RECOMMENDED that the motion be granted to the extent it seeks dismissal of Plaintiff's APA claims.

**C. Plaintiff's Due Process Claim**

In Count Two of Plaintiffs' Amended Complaint, Plaintiffs maintain that USCIS deprived them of their procedural due process rights because USCIS "deprived Plaintiff of the opportunity to respond with the submission of DNA testing evidence." [doc. #41, p.37]. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving individuals of "life, liberty, or property, without the due process of law." U.S. CONST. AMEND. V. The Due Process Clause "clothes individuals with the right to both substantive and procedural due process." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

Procedural due process at its core requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Moreover, due process requires that the notice is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections, and must afford a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

Plaintiff maintains that USCIS violated his right to due process of law under the Fifth Amendment by "depriv[ing] Plaintiff of the opportunity to respond with the submission of DNA testing evidence…" [doc. #41, p. 37]. However, as discussed above, Plaintiff was not deprived of an opportunity to provide DNA testing. Further, the submission of DNA evidence would not necessarily change the outcome of Plaintiff's I-130 petition. Regarding the actual due process requirements,—notice and opportunity to be heard—USCIS provided adequate notice of its intent to deny the petitions in the form of both the original NOID and Second NOID attached information notifying Plaintiffs of the option to submit DNA evidence and produced decision letters that notified Plaintiffs of their appellate rights. [doc. #44-1, p.9]. Based on the facts asserted in the

Amended Complaint, nothing implicates, or even approaches the line of, the Due Process Clause of the Fifth Amendment. As such, the Court finds that Plaintiffs failed to state a claim regarding any due process violations.

Accordingly, it is RECOMMENDED that the motion be granted to the extent it seeks dismissal of Plaintiff's APA claims.

**D. Equal Protection Claim**

Further, Plaintiff alleges that, despite the withdrawal of the prior USCIS PM 602-0064 policy on November 23, 2021, USCIS continues its discriminatory practices, including the recent denial of the I-130 petition. [doc. #48, p. 26-27]. Plaintiff makes no claim that the adjudication statutes or regulations themselves are facially discriminatory but rather USCIS policy, as applied to the Plaintiff, is "selectively discriminatory on the basis of his race." *Id*. at 27. Plaintiff also argues that "to establish standing they need only demonstrate that a discriminatory policy prevents them from applying for immigrant visas on an equal basis." *Id*. Defendants maintain that Plaintiff presents no viable equal protection claim because Plaintiff has failed to allege that "the policies described in the Amended Complaint affected or applied to the decision in this case, or that his rights were violated in any way by the lawful and justified actions of Defendants." [doc. #44-1, p.8].

The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This clause essentially requires that all persons similarly situated be treated alike. *Glass v. Paxton*, 900 F.3d 233, 244 (5th Cir. 2018). "Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim." *Jebril v. Joslin*, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.

1995)). A plaintiff pleading an equal protection claim, either under the Due Process clause of the Fifth Amendment, as Plaintiff does here, or under the Equal Protection clause of the Fourteenth Amendment must make a showing that "similarly situated individuals were treated differently." *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020); see also *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."). "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply." *Id.* "Strict scrutiny is required if the classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Id.* at 354 (quoting *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)). "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose." *Id.*

Plaintiff, however, does not establish the 'threshold element' of an equal protection claim, failing to plausibly allege that Defendants treated "two or more classifications of similarly situated persons" differently. *Hines*, 982 F.3d at 272. Plaintiff has not alleged that he was treated differently from others who were similarly situated. Plaintiff claims the Defendants denied his petition for deficiencies in his Affidavit of Residence based on USCIS PM 602-0064. [doc. #41, p.16]. This policy, by Plaintiff's own admission, was withdrawn in November of 2021, prior to the second adjudication of both his I-130 petitions. *Id.* Plaintiff contends, however, that Defendants' replacement is a "neutral-sounding policy" which is simply a "restatement of Defendants policy that all petitions filed by Yemeni-Americans are 'fraudulent until proven otherwise.'" *Id.* (citing USCIS Policy Manual Volume 1, Part E, Ch. 6.B; 8 CFR § 103.2(b)(2)).

Policy cited by Plaintiff, however, merely states that primary evidence "may be considered unreliable or require additional scrutiny for various reasons, including inaccurate recording, date

of issuance, inconsistent standards for issuance, or widespread fraud." USCIS Policy Manual Volume 1, Part E, Ch. 6.B. The policy continues, "[i]f foreign documents submitted as primary evidence are unreliable according to [the Department of State], USCIS may request secondary evidence in support of the benefit request. In cases where the secondary evidence is insufficient, or where interview criteria indicate, USCIS may refer the benefit requestor for an in-person interview." *Id.* Plaintiff has not alleged that USCIS does not require similar additional demonstrations of evidence for those with unreliable primary evidence—in fact, USCIS allowed Plaintiff an opportunity to submit secondary evidence and complete an in-person interview which are not required under USCIS' policy. As such, Plaintiff has failed to state an equal protection claim.

Accordingly, it is RECOMMENDED that the motion be granted to the extent it seeks dismissal of Plaintiff's equal protection claims.

**E. Declaratory Judgment Act**

Defendants maintain that Count Four should be dismissed because the Declaratory Judgment Act provides a remedial tool and is not an independent basis for relief. The Court agrees with Plaintiffs. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ..., any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. As § 2201 does not create an independent cause of action "[a] request for declaratory judgment is not itself a cause of action, and a claim for a declaratory judgment necessarily fails if there is no underlying cause of action. Therefore, without an independent cause of action declaratory judgment action cannot stand alone." *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400-01 (5th Cir. 2011) (per curiam) ("In

a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990))).

Here, Plaintiff cannot prevail on the underlying claim because it has been dismissed for failure to state a claim. As such, there is no basis on which declaratory relief may be awarded. Accordingly, it is RECOMMENDED that Defendants' motion be GRANTED to the extent that it seeks dismissal of Plaintiff's declaratory judgment claim.

## Conclusion

For the above assigned reasons,

**IT IS RECOMMENDED** that the Rule 12(b)(6) motion to dismiss filed by Defendants be **GRANTED,** and Plaintiff's claims be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

**ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 24th day of September, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE